### MIAMI CYCLE & MFG. CO. v. ALLEN.

(Circuit Court of Appeals, Sixth Circuit. January 7, 1919.)

No. 3193.

1. ESTOPPEL ⬌68(4)—EQUITABLE ESTOPPEL—JUDICIAL PROCEEDING.

Where defendant's tender was open to be interpreted as a cancellation of the patent license contract, and in preceding litigation complainant's assignor did so interpret the tender, and acted under that interpretation until selling his interest to complainant, *held*, that defendant was estopped from claiming its tender should have been construed as a rescission.

2. ESTOPPEL ⬌68(4)—JUDICIAL PROCEEDING—CHANGE OF THEORY.

Where, on first trial, decree was rendered for complainant for royalties due under an exclusive patent license contract, on the theory that there had been a mutual cancellation, and that theory was urged by defendant on motion for rehearing on appeal from first decree, *held*, in view of subsequent surrender by assignee of original complainant of right to recover damages and profits from infringement by others, defendant cannot question the acceptance of the offer.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Suit by Herbert W. Allen, assignee of William Robinson, against the Miami Cycle & Manufacturing Company. From a decree for complainant, defendant appeals. Affirmed.

Walter B. Grant, of Boston, Mass., for appellant.

Leonard Garver, Jr., of Cincinnati, Ohio, and Cornelius C. Billings, of New York City, for appellee.

Before WARRINGTON and DENISON, Circuit Judges, and KILLITS, District Judge.

⬌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

PER CURIAM. The question remitted to the court below by our per curiam opinion on the former appeal (Miami Co. v. Robinson, 245 Fed. 556, 569, 158 C. C. A. 22), was decided by that court, and is now brought before us by this appeal. A mere statement of our conclusions must suffice. It will be sufficiently intelligible, by reference to the former opinion.

The letter and transfer of September 29, 1914, and the acceptance by Robinson, are now claimed by his assignee to have constituted a cancellation in præsenti of the contract of July, 1908, operating only against royalty thereafter accruing, and are claimed by the Miami Company to have been a rescission ab initio, or else to have been wholly ineffective because tendered as the latter and accepted as the former, without meeting of minds. For convenience, we denominate the first of these two conflicting theories as "cancellation" and the second as "rescission." The documents are not necessarily inconsistent with an intent to tender rescission, but the whole record does not justify that interpretation.

The reasons supporting this conclusion are: (a) There is nothing improbable in supposing that the company would be willing to lose what it had invested and take its chances on being compelled to pay royalty until September 29, if it could escape future royalty and get rid of the relations with Robinson. (b) No grounds for rescission existed or had been claimed; and the letter states no claim of cause for rescission, but only alleges breaches which would justify cancellation. (c) The letter demands no repayment of the consideration paid (except remotely under the name of damages for breach). (d) The company's amended answer did not allege rescission, but only "renouncement," and did not ask relief appropriate to rescission. (e) Upon the trial, both parties and the court treated the transaction as a cancellation, and neither by assigned error or by brief or argument in this court did the company complain; on the contrary, it acquiesced in the theory that, if it was liable at all, its liability ceased on September 29. (f) Even in the company's application for rehearing in this court, upon the former appeal, the theory of cancellation seems to be depended upon, and the theory of rescission is, at best, only suggested. Not until the court below, after remand, was asked to enter final decree, was the defense of rescission ever distinctly and clearly made.

[1] Such circumstances as indicate—and there are some which do —the intent to tender rescission are, we think, overborne by these facts just recited. In any event, it is clear that the tender was—at best for defendant—ambiguous, and was open to be interpreted as a cancellation. Robinson did so interpret it, he accepted it under such interpretation, and he continued to act under that interpretation during the remainder of the litigation, and, apparently still acting thereunder, sold his interest to Allen. During all this time, the company was bound to know that its offer was capable of being considered a cancellation, and that Robinson was so considering it and was acting accordingly thereon. Upon the ordinary principles of estoppel, the company cannot now claim that its offer should receive the other construction.

[2] During the progress of this litigation, each party has assumed positions inconsistent with its former action, and it is impossible to give effect to all these shifts. By its application for rehearing on the former appeal, the company impressed upon us the injustice of compelling it to continue bound by the contract after cancellation; now it wishes us to find that there had been no cancellation and that it is still bound. It calls our attention to the fact that, in opposing this application, Robinson's counsel denied that he had accepted the offer of September 29. Perhaps this denial was not seriously intended; perhaps it can be explained because of some misunderstanding; but, in any event, it was wholly ineffective. When Robinson, at the end of the first trial, claimed a decree upon the theory that his right to royalties continued until September 29, and then ceased because this cancellation had been made, and when he obtained the decree based on that theory, and successfully maintained it on appeal, he thereby accepted the offer as upon that theory, there was a cancellation by mutual consent, and the subject was closed. It became Robinson's duty to retransfer whatever of value, if anything, remained with him and to which he was not entitled. This he (by his assignee) has now done, by surrendering the right to recover damages and profits accruing before September 29 from infringement by others. This was belated, but the statute of limitations has not run, and nothing has been lost.

From these considerations, all of which appear without dispute, it is evident that the decree below was right in its substantial result; and it is affirmed.